UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:23-cr-00094-JRS-MG |
| DAVID JOSEPH MULL, | ) ) |
| Defendant. | ) ) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by counsel, John E. Childress, United States Attorney for the Southern District of Indiana, and Kelsey L. Massa, Assistant United States Attorney, hereby submits this Sentencing Memorandum in advance of the hearing presently scheduled for April 30, 2025. For the reasons stated in this Memorandum, the United States respectfully requests that the Court sentence the Defendant to a term of actual incarceration and impose a substantial fine.

*I.   The Defendant's Criminal Conduct*

In support of its sentencing position, the United States refers the Court to the factual summary included in the Presentence Investigation Report (hereinafter "PSR"), the factual basis contained in the plea agreement, and the additional facts outlined below.

In January of 2023, investigators with the Bureau of Alcohol, Tobacco, Firearms and Explosives identified a firearms trafficking cell operating in the Indianapolis area. For years, this cell transported firearms from Indiana to the New

1

York City area at regular intervals; the guns were then transported to Mexico. (PSR ¶ 7). The defendant, David Joseph Mull, was the cell's source of supply.

ATF records showed ATF had previously investigated both the defendant and his late father, David Franklin Mull, for dealing in firearms without a license. In 2016 and 2017, multiple firearms the Mulls had purchased from Federal Firearms Licensees (FFLs) were recovered in Mexico in connection with various crimes and traced back to them. Both the defendant and his father were served with cease-and-desist letters, putting them on notice that their unlicensed dealing activity was illegal – the defendant in 2016 and his father in 2018.

After that warning, the defendant and his father did stop purchasing firearms in large numbers from FFLs. But they did not stop supplying the cell with guns. The defendant eventually took over for his father as the main supplier, and he began purchasing guns from private sellers, typically at gun shows both in Indiana and throughout the country. (PSR ¶ 12). This approach concealed his firearms dealing activity from law enforcement, since private sellers are not required to submit background information to the National Instant Criminal Background Check System (NICS).

The defendant typically communicated with his main customer (Individual A, as referenced in the Indictment) by text message. He would take orders from Individual A and regularly acquired guns on Individual A's behalf, as seen in the text message screenshots below:

> From: +13173534936
> To: +18125923222 (owner)
>
> 9mm
>   Glock 19,17 generation 5 .
>   Sig sauer, Taurus, beretta, 10/22 wood, 38 spl, revólver 22 long, 380s
>
> Participant | Delivered | Read | Played
> +18125923222 | | 8/25/2019 2:03:17 PM(UTC+0) |
>
> Status: Read
>
> 8/25/2019 12:22:37 AM(UTC+0)

> From: +18125923222 (owner)
> To: +13173534936
>
> I am going to a show this weekend. I will try and get ya some stuff.
>
> Participant | Delivered | Read | Played
> +13173534936 | 8/25/2019 2:04:04 PM(UTC+0) | 8/26/2019 1:12:09 AM(UTC+0) |
>
> Status: Sent
>
> 8/25/2019 2:03:53 PM(UTC+0)

In July of 2019, Individual A texted the defendant about a firearm and referenced his "client" who would be paying;

> From: +13173534936
> To: +18125923222 (owner)
>
> Amigo
>   nor15 r15 already offered it and a client only pays me 700 papers
>
> Participant | Delivered | Read | Played
> +18125923222 | | 7/30/2019 11:46:07 PM(UTC+0) |
>
> Status: Read
>
> 7/30/2019 11:45:44 PM(UTC+0)

3



Between 2019 and 2023, the defendant sold over 500 firearms to the trafficking cell in exchange for more than $350,000 in cash. (PSR ¶ 6). These firearms included semiautomatic handguns and AR and AK-style rifles. (*Id.*).



The defendant certainly knew or had reason to know where these guns were going – he even joked with another gun customer[1] that he had sold an AR to "El Chappo [sic]".



---

[1] In addition to supplying his main customer (i.e. the trafficking cell referenced herein), the defendant also devoted extensive time, attention, and labor to selling guns online via Gunbroker.com and to friends and acquaintances. (PSR ¶ 11).

## *II.   An Iron River: Firearms Trafficking to Mexico*

There is only one gun store in all of Mexico.[2] But Mexico's stringent gun laws remain powerless in the face of heavily armed drug cartels, whose leaders control large swaths of the country's territory.

The United States is the primary source of cartel firepower. According to a 2021 study from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), nearly 70 percent of crime guns recovered in Mexico from 2014-2018 and submitted for tracing were originally purchased in the United States.[3] The Mexican government estimates that 200,000 firearms are smuggled into the country from the United States each year.[4]

These trafficked guns aid and abet the illegal drug trade and threaten the lives of law enforcement officers, as well as American and Mexican citizens caught in the crossfire of cartel violence. For instance, in March of 2023, a firearm purchased in the United States and trafficked to a Mexican cartel by a U.S. citizen was used in the kidnapping and murder of U.S. citizens in Matamoras, Mexico.[5] Over 400 Mexican

---

[2] Linthicum, Kate, "There is only one gun store in all of Mexico. So why is gun violence soaring?" THE LA TIMES, May 24, 2018, https://www.latimes.com/world/la-fg-mexico-guns-20180524-story.html

[3] ATF, "Firearms Trace Data: Mexico – 2016-2021," March 10, 2022, available at https://www.atf.gov/resource-center/firearms-trace-data-mexico-2016-2021

[4] Alfonsi, Sharyn et al. "Mexico fights to dam 'iron river' sending guns from U.S. to cartels." CBS News, December 22, 2024, available at https://www.cbsnews.com/news/guns-from-us-ending-up-in-mexico-60-minutes/

[5] U.S. Attorney's Office, Southern District of Texas, "Texan admits to firearms offense linked to Matamoros murder of U.S. citizens," May 17, 2023, https://www.justice.gov/usao-sdtx/pr/texan-admits-firearms-offense-linked-

police officers were killed in 2022.[6] And though exact numbers are difficult to discern, hundreds of thousands of Mexican citizens have been killed in gun-related homicides over the past decade.

### III.  The Guidelines Range

The defendant previously filed an objection to the application of the sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(A). However, counsel for the defendant recently informed the United States that the defendant intended to withdraw that objection. The parties are therefore in agreement with U.S. Probation's calculation of the advisory sentencing guidelines in this case.

With the application of the relevant sentencing enhancements, the guidelines range is 78 to 97 months. However, the statutorily authorized maximum sentence of five years is less than the minimum of this guidelines range; therefore, the guideline term of imprisonment is 60 months.

### IV.  3553(a) Factors

The nature and circumstances of this offense are extremely serious. The defendant operated an illegal gun business for years. He purposely skirted the background check system and record keeping regulations designed to keep guns out of criminals' hands. And even after ATF warned him to cease and desist, the defendant continued funneling guns to his main customer – who the defendant knew

---

matamoros-murder-us-citizens.

[6] "13 Law Enforcement Officers Killed in Ambush in Mexico." THE NEW YORK TIMES, October 23, 2023, available at
https://www.nytimes.com/2023/10/23/world/americas/mexico-police-attack.html

full well was supplying his own "client" in Mexico.

It is impossible to determine the full scope of the damage the defendant's crime caused. But the diversion of guns from legal commerce in the United States to illegal commerce in Mexico fuels cartel violence and the illicit drug trade. The defendant's role in this trafficking scheme warrants severe punishment. A significant sentence of incarceration would also promote respect for the law and deter other offenders from committing similar crimes.

The United States acknowledges the defendant is physically disabled, and the Court may be inclined to vary downward significantly. But the BOP regularly accommodates inmates with a wide range of disabilities. The defendant's disability did not prevent him from running his illegal business, which involved interstate travel on multiple occasions. The United States asserts a sentence of incarceration remains appropriate in this case, even considering the defendant's physical limitations.

Finally, the defendant made substantial financial profits from his gun dealing activity. Therefore, the United States respectfully recommends the Court impose a substantial fine in this case.

          Respectfully Submitted,

          JOHN E. CHILDRESS
          Acting United States Attorney

By:   */s/ Kelsey L. Massa*
      Kelsey L. Massa
      Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2025, a copy of the foregoing Government's Sentencing Memorandum was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

By:   /s/ Kelsey L. Massa
Kelsey L. Massa
Assistant United States Attorney
Office of the United States Attorney
10 W. Market St., Suite 2100
Indianapolis, Indiana 46204-3048
Telephone: (317) 226-6333
Email: Kelsey.Massa@usdoj.gov